# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROSETTA DASARO,                    :          Civil Action No. 14-7773 (PGS)
INDIVIDUALLY, AND AS THE           :
ADMINISTRATRIX OF THE ESTATE       :          MEMORANDUM OPINION AND
OF ANTHONY DASARO, DECEASED,       :                  ORDER
                                   :
           Plaintiff,              :
                                   :
     v.                            :
                                   :
COUNTY OF MONMOUTH;                :
MONMOUTH COUNTY                    :
CORRECTIONAL INSTITUTION;          :
CORRECT CARE SOLUTIONS, LLC;       :
CORRECTIONAL MEDICAL               :
SERVICES, INC.; AND JOHN DOES 1-   :
10, ET AL                          :
                                   :
           Defendants.             :
_____

**BONGIOVANNI, Magistrate Judge**

## I.      Introduction

        Before the Court is Plaintiff Rosetta Dasaro's ("Plaintiff") motion seeking leave to file an

Amended Complaint, and file a late Second Amended Notice of Tort Claim.   [Docket Entry No.

28].   Plaintiff seeks to amend her Complaint to join as co-defendants Monmouth County

Corrections Institution ("MCCI") Warden Barry Nadrowski, and two MCCI Corrections Officers,

Gingerelli and Hauseman (collectively "County Employees").   [Docket Entry No. 28-1 at 7-8].

Plaintiff also seeks to join as co-defendants certain Correct Care Solutions, LLC ("CCS")

employees who were allegedly involved in the mental and physical health evaluation of the

decedent Anthony Dasaro: Martin Marino, Pauline Tyas, Kabeeruddin Hashini, Ibironke

Macaulay, Ashley LaBarbera and Alicia Caputo-Smith ("CCS Employees," and collectively with

the County Employees the "Individual Defendants").   [*Id*.].   Plaintiff additionally seeks to file a

late Second Amended Notice of Tort Claim naming the Individual Defendants.  [*Id.* at 6]. Defendant CCS filed a response in opposition to Plaintiff's motion on April 1, 2016.  [Docket Entry No. 29].  Defendants County of Monmouth and MCCI (the "County Defendants") also filed a response on April 29, 2016, joining its opposition with CCS.  [Docket Entry No. 32].  Plaintiff replied to CCS's response on April 6, 2016.  [Docket Entry No. 30].  Plaintiff replied to the County Defendants' response on May 3, 2016.  [Docket Entry No. 33].

The Court has fully reviewed the papers in support of and in opposition to Plaintiff's motion. The Court considers Plaintiff's motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth below, Plaintiff's motion is GRANTED IN PART, DENIED IN PART.

## II.    Background Facts and Procedural History

Anthony Dasaro ("Decedent") was arrested on April 28, 2014, and was incarcerated at MCCI from the date of his arrest, until his May 3, 2014 suicide by hanging.  [Docket Entry No. 1 at 2-4, *Pl. Original Compl.*].  Plaintiff then filed a Notice of Claim on the County Defendants within the 90-day deadline required by the New Jersey Tort Claims Act § 59:8-8.  [Docket Entry No. 28-1 at 1].  Plaintiff did not serve a Notice of Claim on CCS within this 90-day deadline.  [*Id.*]. Subsequently on December 11, 2014, Plaintiff, individually and as the Administratrix of the Estate of Anthony Dasaro, filed her Complaint against the County Defendants, CCS, and 10 unnamed Police Officers and/or Corrections Officers employed by the County Defendants and/or CCS. [Docket Entry No.1 at 3-23].  Her Complaint asserted various claims including: violations of 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; the Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution; the New Jersey State Constitution; and New Jersey state tort law. [*Id.* at 8].  In response, CCS filed a February 16, 2015 Motion to Dismiss Plaintiff's Complaint for

failure to state a claim, and for failing to serve a Notice of Claim upon CCS.  [Docket Entry No. 8, *Def. CCS's Mot. to Dismiss.*].

Shortly thereafter, on February 19, 2015, Plaintiff filed a Motion for Leave to File a Late Notice of Claim on CCS pursuant to N.J.S.A. 59:8-9, which upon a claimant's showing of extraordinary circumstances, gives trial courts the discretion to let claimants file a late Notice of Claim on a defendant, within one year of the accrual of a claimant's cause of action.  [Docket Entry No. 11. *Pl's. First Mot. to File a Late Notice of Claim*].  The District Court heard oral argument for both motions on September 29, 2015, and issued the following day an Opinion and Order granting the Plaintiff leave to file a late Notice of Claim against CCS.  [Docket Entry No. 22].  The District Court found the Plaintiff demonstrated the extraordinary circumstances required to file a late Notice of Claim because despite CCS's public function of providing medical services to prisoners, a CCS employee had provided an affidavit identifying CCS as a private corporation. [*Id.* at 5].  Therefore, CCS's status as a public or private entity was unclear, and Plaintiff could not have reasonably known CCS was required to be served with a Notice of Claim within the original 90 days.  [*Id.*].  Further, the District Court dismissed Plaintiff's § 1983 and New Jersey Constitutional claims without prejudice, and denied without prejudice CCS's Motion for Summary Judgment as to Plaintiff's medical negligence claim.  [*Id.* see also Docket Entry No. 23].

Plaintiff's instant motion was filed on March 24, 2016. Upon initial review of the parties' submissions, the Court found the parties had overlooked N.J.S.A. § 59:8-10, a relevant provision of the New Jersey Tort Claims Act which might have an effect on this Court's determination. Therefore, in a July 21, 2016 Letter Order, the Court ordered supplemental briefing regarding the import of said provision on the instant motion.  [Docket Entry No. 34].  The Plaintiff submitted its supplemental letter brief on July 29, 2016.  [Docket Entry No. 35].  CCS and the County

Defendants responded in kind, filing their supplemental letter briefs in opposition on August 4, 2016.  [See Docket Entry Nos. 36 and 37, *respectively*].[1]

### III.    Discussion

**Motion to File a Second Late Notice of Claims**

The New Jersey Tort Claims Act states public entities are "not liable for injury, whether such injury arises out of act or omission of the public entity or a public employee." N.J.S.A. 59:2-1 (West).  A claimant shall be forever barred from recovering against a public entity or public employee if "the claimant failed to file the claim with the public entity within 90 days of accrual of the claim.  N.J.S.A. 59:8-8 (West).  However, a Plaintiff may still file a late notice of claim pursuant to N.J.S.A. 59:8-9 which states:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing *sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter*; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

N.J.S.A. 59:8-9 (West) (emphasis added)

Cases which have excused strict statutory compliance generally involve claimants who have been diligent in their efforts complying with the statutory period.  *Id.*  Extraordinary circumstances can excuse statutory compliance when, despite diligent efforts by the claimant,

---

[1] The Court also reminds the parties of their obligations to comply with the letter of the Court's Orders. Although the Court ordered supplemental briefing, the briefing was an "opportunity to address [the bearing of] this provision [N.J.S.A. §59:8-10], on the circumstances of the case."  [Docket Entry No. 34s at 6].  It was not, as the parties apparently believed, an invitation to file sur-replies arguing issues previously raised in the parties' original moving papers.

information identifying the parties of a claim is either unattainable or thwarted by the original defendants. *Id.* (citing *Feinberg v. State Dept. of Envtl. Prot.*, 137 N.J. 126 (1994)).

In her original moving papers, the Plaintiff relies on the latter half of N.J.S.A. § 59:8-9 which states: "[a claimant may file a late Notice of Claim] provided that in no event may any suit against a public entity or a public employee arising under this act be *filed later than two years from the time of the accrual of the claim*." [Docket Entry No. 28-1 at 7; citing N.J.S.A. 59:8-9 (West) (emphasis added)]. Plaintiff interprets this portion of the statute to mean a trial court retains the discretion to allow a plaintiff to file a late Notice of Claim within two years of the accrual of the claim. [*Id.*].

In this regard, the Plaintiff asserts her motion is timely as it was filed within two years of the May 3, 2014 accrual of Plaintiff's claims. [*Id.*]. Likewise, the Plaintiff argues she has demonstrated the extraordinary circumstances required to file the claim. [*Id.*]. Plaintiff claims she did not name the Individual Defendants in her original Notice of Claim because the Plaintiff only recently received CCS's Rule 26 disclosures, and consequently discovered the Individual Defendants' participation in the evaluation and treatment of Decedent. [*Id.* at 9]. Further, the Plaintiff has not received MCCI's Rule 26 disclosures and has been unable to confirm the County Employees' status as employees or independent contractors. [*Id.*].

Additionally, in Plaintiff's reply to the County Defendants' response, Plaintiff cites the recent New Jersey Appellate Division, *Gomes v. County of Monmouth, No. A-1679-14* (App. Div. April 14, 2016). Plaintiff argues that *Gomes* shows CCS need not be served with a Notice of Claim, as it is a "private entity" under the meaning of the statute, and thus is exempt from the notice provisions of N.J.S.A. 59:8-8. [Docket Entry No. 33 at 1].

In contrast, CCS argues that private entities who contract with a public entity to perform

public duties, such as CCS's provision of medical care to inmates, are public entities subject to the notice provisions of N.J.S.A. 59:8-8.  [Docket Entry No. 29 at 8].  As such, there is no reason why the Plaintiff could not have identified and named the CCS Employees in her original Notice of Claim, within the statutory period that the Tort Claims Act requires.  [*Id.* at 2-3].  Therefore, Plaintiff failed to serve a timely Notice of Claim on CCS identifying the CCS Employees that Plaintiff is attempting to join as defendants.  [*Id.*].  Furthermore, CCS argues that the New Jersey "discovery rule" does not supersede the notice requirements of the Tort Claims Act. Therefore, even though Plaintiff had not learned the names of the CCS Employees she wishes to add, this fact is immaterial and cannot be used to extend the period for application to file a late Notice of Claim beyond one year.  [*Id.* at 8-9].  CCS lastly argues that Plaintiff's proposed Amended Complaint fails to allege valid causes of action under 42 U.S.C. §§ 1981, 1983, 1985, 1986, or 1988, and that the Plaintiff is seeking to reinstate claims that have already been dismissed by the Court.  [*Id.* at 10-20].  The Court however notes that CCS's August 4, 2016 supplemental letter brief concedes CCS was not required to be served with a Notice of Claim, as the *Gomes* case properly disposes the issue in Plaintiff's favor.  [Docket Entry No. 36].

The County Defendants argue the Plaintiff had no reason to unduly delay filing a Notice of Claim naming the County Employees.  [Docket Entry No. 32 at 8-11].  The County Defendants also assert that Plaintiff has failed to show the extraordinary circumstances required for a trial court to grant leave to file a late Notice of Claim.  [*Id.* at 11]. The County Defendants also support CCS's argument that Plaintiff has failed to state a valid cause of action under 42 U.S.C. §§ 1981, 1983, 1985, 1986, or 1988.  [*Id.* at 12-29].  Lastly, the County Defendants argue that the Plaintiff neither used the proper Notice of Claim form properly promulgated by the County under the authority granted to it pursuant to N.J.S.A. 59:8-6, nor properly named the Individual County Defendants in

the applicable form pursuant to N.J.S.A. 59:8-4.  [*Id.* at 9-10].

As CCS has conceded it did not need to be named in a Notice of Claim, the Court will only address the County Defendant's arguments about whether the Plaintiff may be permitted to file a late Notice of Claim. The County Defendants in this regard, argue in their sur-reply that "section 59:8-10 defines the manner of service; it does not define the party on whom service must be made." [Docket Entry No. 37 at 3; citing *Forcella*, 70 F. Supp. 2d at 518-19].  However, this short and plain statement does not conclusively establish why N.J.S.A. 59:8-10 does not apply. N.J.S.A 59:8-10 provides in relevant part:

> 59:8-10. Presentation of Claim.
>
> *c. Service of the notice required by this chapter upon the public entity shall constitute constructive service upon any employee of that entity.*
>
> N.J.S.A 59:8-10 (West) (emphasis added)

The Court believes in light of N.J.S.A 59:8-10, the Plaintiff's failure to name the Individual Defendants in her original Notices of Claim is immaterial.  Here it is undisputed that Plaintiff's claim accrued on May 3, 2014, the date of Decedent's passing. It is also undisputed that the 90-day period to file a Notice of Claim under N.J.S.A. 59:8-8 expired on August 1, 2014. Likewise, although the County Defendants claim that Plaintiff did not in fact properly serve MCCI, the Plaintiff claimed it served a timely Notice of Claim against the County Defendants within the 90-day period.  [Docket Entry No. 28-1 at 1].  Likewise in considering same, the District Court similarly found "Plaintiff timely filed Notices of Claim with the Monmouth County Defendants…" [Docket Entry No. 22 at 5].  Further, although the County Defendants filed their appearances on February 27, 2016, eight days after the Plaintiff filed her original February 19, 2015 Motion to File a Late Notice of Claim, the County Defendants did not dispute the statutory compliance of their entities' original service with Plaintiff's first Notice of Claim, in the time between their

appearances and March 6, 2015 Answer, and the District Court's September 30, 2015 Opinion and Order. Moreover, all of the named Individual Defendants were employed by either CCS or the County Defendants at the time the Plaintiff's claim accrued. Therefore, because the District Court has already found service was proper upon the public entity, said service "constitute[d] constructive service upon any employee of that entity." Thus, the Court believes that the Individual Defendants were put on notice when their respective entities were properly served and Plaintiff has complied with the notice requirements of the Tort Claims Act, to the extent it required the naming of the Individual Defendants. Plaintiff's motion to file a second late notice of claims is GRANTED.

### Motion to Amend

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing an amendment either through the court's leave or through obtaining the opposing party's written consent. *Smith v. Honeywell Int'l, Inc.*, No. 10-CV-03345-ES-JAD, 2014 WL 301031, at *11 (D.N.J. Jan. 27, 2014). While courts have broad discretion to decide motions to amend, they are to "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." *Voilas et al. v. General Motors Corp., et al.,* 173 F.R.D. 389, 396 (D.N.J. May 9, 1997) (internal citations and quotations omitted); *see also* Wright & Miller section 1484, at 676 ("Subdivision (a)(2) encourages the court to look favorably on requests to amend."). This ensures that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.,* 92 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); see also *Sabatino v. Union Township,* No., 2013 WL 1622306, at *6 (D.N.J. April 15, 2013) (internal citations omitted) (discussing that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits."). The decision to grant or

deny leave to amend under Rule 15(a) is "[c]ommitted to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein,* 10 F.3d 168, 174 (3d Cir. 1993). In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. *Grayson v. Mayview State Hosp.,* 292 F.3d 103, 108 (3d Cir. 2002).

### 1. Undue Delay

Delay alone is not sufficient to justify denial of leave to amend. *Arthur v. Maersk, Inc*., 434 F.3d 196, 204 (3d Cir. 2006); citing *Adams v. Gould Inc*., 739 F.2d 858, 868 (3d Cir. 1984). "[H]owever, at some point, delay will become 'undue,' placing an unwarranted burden on the court ... [and] an unfair burden on the opposing party." *Id*. When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied. *Id*.; see also *Cureton*, 252 F.3d at 273 ("the question of undue delay requires that we focus on the movant's reasons for not amending sooner.").

Only CCS has opposed Plaintiff's motion on the basis that Plaintiff unduly delayed seeking leave to Amend. However, from an examination of this cases' timeline, no undue delay has occurred. Plaintiff's instant Motion was filed on March 24, 2016, less than a year and a half after the commencement of this litigation on December 11, 2014. Similarly, the Court only held its initial scheduling conference with the parties on November 25, 2015. Further CCS tendered Plaintiff its Rule 26 initial disclosures on Nov 5, 2015 and Plaintiff still has not received Rule 26 initial disclosures from the County Defendants. Likewise, neither defendant has answered interrogatories nor taken depositions. In sum, weighing the aforementioned, Plaintiff's motion is not so untimely as to deny her leave to amend. See *Arthur v. Maersk*, Inc., 434 F.3d 196, 204-05 (3d Cir. 2006) ("eleven months from commencement of an action to the filing of a motion for leave to amend is not, on its face, so excessive as to be presumptively unreasonable"); citing

*Dubicz v. Commonwealth Edison Co*., 377 F.3d 787, 793 (7th Cir. 2004) (delay of eight months); *Tefft v. Seward*, 689 F.2d 637, 639–40 (6th Cir. 1982) (delay of four years); *Buder v. Merrill Lynch, Inc*., 644 F.2d 690, 694 (8th Cir. 1981) (delay of two and a half years).

### 2. Futility of Amendments

In determining whether a proposed amendment is futile, "the court looks only to the pleadings." A proposed amendment is futile if it "would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "In assessing 'futility' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* When faced with a motion to dismiss for failure to state a claim, the court conducts a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual elements are separated from the legal elements of the claim. *Id.* at 210-11. The court must accept the factual elements alleged in the well-pleaded complaint as true, but may disregard any legal conclusions. *Id.* Second, the court must decide if the facts alleged are sufficient to show a "plausible claim for relief." *Id.* at 210 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 679. In determining whether a proposed amendment is futile, "the court looks only to the pleadings." *Pharmaceutical Sales & Consulting Corp. v. J. W.S. Delavau Co*., 106 F.Supp.2d 761, 765 (D.N.J. 2000).

The only amendment Plaintiff seeks to make is the joining of the Individual Defendants in the Plaintiff's existing counts alleging violations of: 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; the Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution; the New Jersey State Constitution; and New Jersey state tort law.

### a)  County Defendants

Plaintiff's allegations against the County Defendants and County Employees are found in her "Parties" section, and her counts Three through Thirteen.[2]  [Docket Entry No. 28-8, *Pl's. Prop. Am. Compl.* at 3-28, ¶¶ 10-12, 24, 45-116].  In her "Parties" section, Plaintiff alleges the "[County Employees] are employed by the County of Monmouth and/or the [MCCI]."  [*Id.* at 3-4, ¶¶ 10-12].  Similarly, the County Employees "were responsible for the supervision, housing placement, suicide watch, and suicide prevention of the [D]ecedent, [], at all times relevant hereto."  [*Id.* at 5, ¶ 24].

However, in examining Plaintiff's counts Three through Thirteen, except for a few select paragraphs, the Court struggles to discern the exact gravamen of Plaintiff's claims against the County Employees. In addition to the Plaintiff failing to state whether the Warden is being sued in his official or individual capacities; the majority of the Plaintiff's allegations are set forth in conclusory fashion.  [*Id.* at 11-13, ¶¶ 47-51; see also ¶¶ 56-57, 66-67 (alleging "based upon information and belief, on or about May 3, 2014, inside of [MCCI], [D]ecedent, was violently assaulted and brutally beaten and killed by defendants, [] Gingerelli and [] Hasueman"; alleging the Corrections Officers have unlawfully acted against inmates in the past, and have forged entries in official records to obscure said unlawful acts; that Warden Nadrowski knew of the Correction Officers' violent propensities; and that generally, the Warden failed to correct said behavior); ¶¶ 68-69 (alleging the Warden failed to supervise the Corrections Officers); ¶75 (this hiding and concealing of the aforementioned unlawful actions is a civil conspiracy); ¶¶ 96, 105 (Corrections Officers' use of force was done intentionally and deliberately, and is a violation of civil rights.).

---

[2] The Defendants also note, and the Court is aware, Plaintiff does specify whether proposed co-defendant Warden Barry Nadrowski is being sued in his individual or official capacity.

A plaintiff's Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to provide the defendant with fair notice of the basis of the plaintiff's claims in order for the defendant to respond to the Complaint. *Transtech Indus., Inc. v. A & Z Septic Clean*, 798 F. Supp. 1079, 1091 (D.N.J. 1992) (a complaint must be "understandable, fair and amendable to response"; that is, "clear and concise enough for defendants to understand the nature of the Complaint and be able to respond and defend itself."). "While a complaint […] does not need *detailed* factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).  Similarly, where a complaint pleads facts that are *merely consistent* with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Ashcroft*, 566 U.S. at 678 (internal quotations omitted; emphasis added); see also *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011).  While the Court can generally understand the nature of the Plaintiff's complaint against the County Employees, she has alleged nary a supporting fact to bring her claims beyond the level of a mere possibility. Therefore, the Court <u>DENIES WITHOUT PREJUDICE</u> Plaintiff's request for leave to Amend to add the County Employees.

### b)  CCS Employees

Plaintiff's allegations against the CCS Employees are in her "Parties," section, and remaining counts One and Two.  [Docket Entry No. 28-8 at 6-10].  Plaintiff's "Parties" section alleges that "[CCS] was and is a limited liability corporation, performing work, labor and services within the State of New Jersey."  [*Id.* at 3, ¶ 8].  Similarly, "[CCS] administered medical and

pharmaceutical services to the inmates of [MCCI]." [*Id*. at ¶ 9]. Additionally, the CCS Employees "w[ere] at all times relevant hereto, employed by Correct Care Solutions, LLC." [*Id*. at 4, ¶¶ 13-18]. Further, "[CCS] w[as] responsible for the hiring, training, supervision, discipline, retention […] of its employees [the CCS Employees]; and that [the CCS Employees] assessed, evaluated, and examined the [D]ecedent on behalf of [CCS]. [*Id*. at 5, ¶¶ 22-23].

Plaintiff's count One alleges that prior to Decedent's arrest, he was being treated for bi-polar manic depressive and post-traumatic stress disorder. [*Id*. at 6, ¶ 26]. Upon Decedent's arrest and incarceration, his medications were confiscated and he was unable to take the appropriate medication for four days prior to his death. [*Id*. at ¶ 27]. The CCS Employees performed medical services on Decedent including, taking his medical history, assessing suicide risk, and evaluating Decedent's medical conditions; in doing so becoming aware of Decedent's disorders, suicide risk, and need for medication. [*Id*. at 6-7, ¶¶ 28, 31]. Plaintiff alleges the CCS Employees performed the evaluations improperly. [*Id*. at 7, ¶ 32]. Further, the CCS Employees did not recommend the proper suicide prevention housing, administer decedent's medications, or provide appropriate psychological care. [*Id*. at ¶ 32]. This failure to take the proper precautions led to Decedent's death. [*Id*. at ¶ 33].

Plaintiff's count Two alleges the CCS Employees' wrongful actions were done under color of state law and consequently are also violations of 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; constitutional claims under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution; and constitutional claims under the New Jersey State Constitution. [*Id*. at 9-10, ¶ 41]. The Court will analyze those violations in turn.

**§ 1981 Claim**

42 U.S.C. § 1981 states, in relevant part:

**(a) Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b) "Make and enforce contracts" defined**

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**(c) Protection against impairment**

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C.A. § 1981 (West)

The Plaintiff has plead no specific facts showing Decedent's denial of care was racially motivated, or to allege a claim remotely close to those claims found viable by the Circuit. Moreover, none of the complained conduct in Plaintiff's Amended Complaint implicates even a remote violation of the provisions set forth in the strict letter of § 1981. Therefore, Plaintiff's motion to amend her Complaint to include violations of 42 U.S.C. § 1981 against the CCS Employees is DENIED.

### § 1983 Claim

A plaintiff asserting civil rights violations under § 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States. *Coletta v. Bd. of Freeholders*, No. CIV.A. 06-585 (MLC), 2007 WL 128893, at *3 (D.N.J. Jan. 12, 2007); citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). § 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws. *Id.*; see also *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Therefore because the purpose of § 1983 is to vindicate federal

civil rights, the Court will address the Plaintiff's Fourth, Fifth, Eighth and Fourteenth Amendment violations within this section. See *Islam v. City of Bridgeton*, 804 F. Supp. 2d 190, 197 (D.N.J. 2011) ("an individual harmed by a violation of the United States Constitution by a person acting under color of state law may bring an action under 42 U.S.C. § 1983").

If the Plaintiff successfully asserts a viable § 1983 claim against the CCS Employees, she also successfully asserts any analog state constitutional claims.

### Fourth Amendment Violation

The Fourth Amendment concerns "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment governs excessive force claims arising out of an arrest or investigatory stop. *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Under the Fourth Amendment, whether an officer used excessive force is assessed by the "objective reasonableness," of that officer's conduct. *Hill v. Algor*, 85 F. Supp. 2d 391, 399 (2000); (citing *Graham v. Connor*, 490 U.S. 386 (1989)). Whether the force used to effectuate an arrest is reasonable depends upon "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

Plaintiff's Amended Complaint does not plead any facts or circumstances alleging the CCS Employees conducted an unreasonable search or seizure, or used any excessive force upon Decedent. Therefore, Plaintiff's motion to amend her Complaint to include Fourth Amendment violations against the CCS Employees is DENIED.

### Eighth Amendment Violations

While the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)); (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40 (1977)).  Here, Plaintiff alleges the Decedent was "arrested and placed in the Monmouth County Jail".  [Docket Entry No. 28-8 at 6, ¶ 25].  Thus Plaintiff was only a pre-trial detainee, who never retained a formal Eighth Amendment right.  Therefore, the Court DENIES Plaintiff's motion to amend her Complaint to include Eighth Amendment claims against the CCS Employees.

### Fifth and Fourteenth Amendment Violations

According to the Fifth and Fourteenth Amendments to the United States Constitution, no State shall deprive a person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.  *U.S. Const.* Amend. V and *U.S. Const.* Amend. XIV, § 1.  Deprivation of medical care to arrestees violates their right to due process if it constitutes deliberate indifference to medical needs.  See *City of Revere*, 463 U.S. at 239 (holding that the Due Process Clause confers arrestees a right to prompt medical treatment); see also *Natale*, 318 F.3d at 582 (evaluating a Fourteenth Amendment claim for inadequate medical care under the deliberate indifference standard).

In order to establish a violation of one's right to adequate medical care, a Plaintiff must allege he or she had (1) a serious medical need; and (2) the behavior on the part of prison officials constituted deliberate indifference to that need. *Id.*; citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that a "doctor determines needs treatment [,] or is so

clear that a layperson would realize it needs a doctor's attention." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); citing Pace v. Fauver, 479 F.Supp 456, 458 (D.N.J. 1979). Medical need may also be considered serious if a delay or denial of care causes unnecessary and wanton infliction of pain, or life-long handicap, or permanent loss. *Szemple v. Rutgers*, 2016 WL 1228842, at 6* (D.N.J. 2016); citing *Townsend v. Holt*, 2013 WL 4459023, at *5 (M.D. Pa. 2013).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse* at 197. However, deliberate indifference requires that a plaintiff demonstrate more than just negligence. *Thomas v. Dragovich*, 142 Fed. Appx. 33, 36 (3d Cir. 2005). In fact, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); citing *Estelle*, 429 U.S. at 106; see also *Daniels v. Williams*, 474 U.S. 327, 332–34 (1986) (holding that negligence is not compensable as a Constitutional deprivation). "[M]ere disagreement as to the proper medical treatment," is also insufficient. *Lanzaro*, 834 F.2d at 346 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); *Massey v. Hutto*, 545 F.2d 45, 46 (8th Cir. 1976) (*per curiam*).

These allegations plausibly establish a Fourteenth Amendment violation. Here, Plaintiff alleges the Decedent had a serious medical need as, at the time of his arrest and subsequent incarceration, he was being treated in some capacity for bi-polar manic depressive disorder and post-traumatic stress disorder, and had received daily-prescriptions to treat same. [Docket Entry No. 28-8 at 5, ¶ 26]. Plaintiff additionally alleges the CCS Employees performed medical services on Decedent including taking his medical history, assessing suicide risk, and evaluating

Decedent's medical conditions.  [Docket Entry No. 28-8 at 5-7, ¶¶ 23, 31].  Plaintiff also alleges that in doing so, the CCS Employees were made aware of the Decedent's disorders, and his need for daily medication to control his conditions.  [*Id*. at 6, ¶ 28].  Plaintiff likewise also alleges that Decedent's medications were confiscated and he was not administered the medications for at least four days.  [*Id*. at 6, ¶ 27, 30].

Although CCS argues the Plaintiff allegations "[are] nothing more than her subjective dissatisfaction [with the course of treatment]," "do[] not allege a subjective component," "do[] not allege any delay or denial of medical care […]," and at best only "allege[] a cause of action for medical negligence[,] but not deliberate indifference," [see Docket Entry No. 29 at 15-16], the Court finds that the facts plausibly establish deliberate indifference on the part of the CCS Employees.  In addition to the Plaintiff's allegations of the CCS Employees' medical negligence, where Plaintiff alleged the CCS Employees should have known to properly diagnose and/or treat the Decedent, the Plaintiff has alleged more. Specifically Plaintiff alleges that the CCS Employees were made aware of the Decedent's respective disorders and need for daily medication, and chose to not only allow the medicines to remain confiscated, but also chose not to prescribe the Decedent an effective substitute for same, for a period of four days. The Court believes that this knowing-inaction is precisely the subjective element required to adequately plead a deliberate indifference claim. Therefore, Plaintiff's motion to amend her Complaint to include Fourteenth Amendment claims against the CCS Employees is GRANTED.

### § 1985 and § 1986 Claims

To make out a conspiracy claim under 42 U.S.C. § 1985, Plaintiff must "prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under

the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). "In § 1985 cases, federal courts often reject vague and conclusory claims, and require particular and specific allegations of conspiracy." *Szemple v. Rutgers*, 2016 WL 1228842 at *7 (D.N.J. 2016).

Likewise, federal courts have held that when a plaintiff is unable to plead specific facts to make out a conspiracy claim under 42 U.S.C. § 1985, then the plaintiff also fails to state a claim under § 1986. See *Foulke v. McCloud*, 2014 WL 47726 at *5 (D.N.J. 2014); see also *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980) ("Because transgressions of [§] 1986 by definition depend on a preexisting violation of [§] 1985, if the claimant does not set forth a cause of action under latter, its claim under the former necessarily must fail also.").

Plaintiff's Amended Complaint alleges no facts indicating the CCS Employees had created a plan or scheme deprive the Decedent of equal protection of the law. Therefore, Plaintiff's motion to amend her Complaint to include violations of 42 U.S.C. § 1985 against the CCS Employees is DENIED. In turn, Plaintiff's failure to state a § 1985 claim prevents Plaintiff from establishing the prerequisite violation required to bring a § 1986 claim. Therefore, Plaintiff's motion to amend her Complaint to include violations of 42 U.S.C. § 1986 against the CCS Employees is likewise DENIED.

### § 1988 Claim

42 U.S.C. § 1988 (b) states in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title…the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs […]." 42 U.S.C.A. § 1988 (West).  Because the Court has granted the

Plaintiff leave to amend her Complaint to include § 1983 violations against the CCS Employees, the Plaintiff may still recover attorney's fees under §1988. Consequently, Plaintiff's motion to Amend her Complaint to include a § 1988 claim is also GRANTED.

**State Negligence Claim**

To sufficiently plead a claim for negligence, a plaintiff must allege: "(1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an injury to plaintiff proximately caused by defendant's breach." *Bethea v. Roizman,* 2012 WL 4490759, * 23 (D.N.J. Sept. 27, 2012) citing *Endre v. Arnold,* 300 N.J.Super. 136, 142, 692 A.2d 97 (App.Div.1997). Here, the Court believes the Plaintiff has adequately alleged a claim for negligence against the CCS Employees. As discussed *supra*, the Plaintiff alleges the Decedent was being treated and medicated for bi-polar manic depressive and post-traumatic stress disorder, and upon evaluating Decedent, the CCS Employees were made aware of same.   [Docket Entry No. 28-8 at 5-7, ¶¶ 23, 26, 28, 31]. As the CCS Employees were the staff responsible for treating the Decedent upon his intake to MCCI, the CCS Employees had a duty to perform their screenings, and any consequential treatments appropriately. The Plaintiff's Complaint also alleges facts showing despite the CCS Employees' awareness of Decedent's needs, they failed to provide Decedent his medications, or a substitute, for four days prior to his death. Lastly, it is plausible to the Court that a failure to provide a substitute for the Decedent's medications contributed to the Decedent's eventual suicide. Consequently, Plaintiff's motion to amend her Complaint to include state negligence claims against the CCS Employees, is GRANTED.

**V.      Conclusion**

Therefore, for the reasons set forth above, and for good cause shown:

IT IS on this 15th day of September, 2016

1.  ORDERED that Plaintiff's motion for Leave to Amended her Complaint is GRANTED IN PART AND DENIED IN PART; and it is further

2.  ORDERED that Plaintiff shall file its Amended Complaint in conformance with this Court's Memorandum Opinion and Order within 10 days of the date of this Order; and it is further

3.  ORDERED that the Clerk of the Court shall terminate the aforementioned motion [Docket Entry No. 28].


        s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**